UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-172-GWU

MARTHA MILLER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Martha Miller brought this action to obtain judicial review of an administrative decision on her applications for Disability Insurance Benefit and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Miller, a 50-year-old former factory worker, machine tender, and dishwasher with “limited” education, suffered from impairments related to morbid obesity, multiple arthralgias, patellofemoral osteoarthritis, hypothyroidism, spondylolisthesis of L5-S1, borderline to low average intelligence, major depression, and posttraumatic stress disorder. (Tr. 29, 39-40). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 33, 39). Since the available work was found to constitute a significant number of jobs in the national economy,

the claimant could not be considered totally disabled. (Tr. 40-41). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 40).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Martha Goss included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as: (1) an inability to ever balance and climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb stairs or ramps, kneel, stoop, crouch, and crawl; (3) an inability to ever operate foot pedal controls; (4) a need to avoid exposure to concentrated vibration; (5) a limitation to entry level work with simple repetitive one-two-three-step procedures with no frequent changes in work routines, and no requirement for detailed or complex problem solving, independent planning or the setting of goals; and (6) a limitation to work in an object-focused environment with only occasional casual contact with co-workers, supervisors or the general public. (Tr. 69). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Id.). Therefore, assuming that the hypothetical factors fairly characterized Miller's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Kip Beard examined Miller and noted a diagnostic impression of chronic thoracolumbar strain, possible patellofemoral osteoarthritis and morbid obesity. (Tr. 265). Dr. Beard indicated that the plaintiff would be limited in her ability to squat, kneel, crawl, bend repetitively and lift heavy objects. (Tr. 266). The physical factors of the hypothetical question were essentially consistent with this opinion. Dr. David Swan reviewed the record and opined that the claimant did not suffer from a "severe" physical impairment. (Tr. 329). Thus, this report does not support Miller's disability claim. No treating or examining source, including the staff at Mary Chiles Hospital (Tr. 232-243, 267-270), the staff at Saint Joseph Mount Sterling (Tr. 330-347, 386-397, 429-474, 502-510), the staff at the Foothills Clinic (Tr. 363-385, 475-495) and the staff at the Montgomery County Health Department (Tr. 398-406), identified the existence of more severe physical limitations than those found by the ALJ. Therefore, the ALJ dealt properly with the evidence of record relating to the plaintiff's physical condition.

The ALJ also dealt properly with the evidence of record relating to Miller's mental status. The mental factors of the hypothetical question were compatible with the limitations indicated by Psychologists Jane Brake (Tr. 290-291) and Ilze Sillers (Tr. 324-325), the non-examining medical reviewers, which included a "moderate" restriction of ability to maintain attention and concentration for extended time periods, work in coordination or proximity to others without being distracted by them,

interact appropriately with the general public, and respond appropriately to changes in the work setting.

Psychologist Paul Carney examined Miller and diagnosed a possible posttraumatic stress disorder. (Tr. 276). Carney opined that the plaintiff would have a “good” ability to understand, remember and carry out simple instructions and sustain attention and concentration to perform simple repetitive tasks, a “fair” ability to relate to others including fellow workers and supervisors, and a “poor” ability to adapt or respond to stresses and work pressures. (Tr. 276-277). The ALJ gave weight to this opinion with the exception of the poor ability to respond to work pressures. (Tr. 39). This restriction was rejected because the reviewers believed that the examiner had not accounted for the claimant’s ability to handle tasks in a different environment from that of her previous work setting in which she had witnessed an explosion. (Tr. 39, 292, 326). The claimant has not objected to this finding by the ALJ. Therefore, Carney’s opinion also supports the administrative decision.

Miller argues that the ALJ erred in rejecting the opinion of Dr. Samuel Welch of the Pathways, her treating mental health professional. Dr. Welch identified extremely severe mental limitations on a March, 2008 Mental Health Questionnaire including a “poor or none” ability in such areas as maintaining regular attendance and being punctual with customary strict tolerance, sustaining an ordinary routine without special supervision, working in coordination with others without being unduly

distracted, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, dealing with normal stress, interacting appropriately with the general public, and traveling in unfamiliar places. (Tr. 246). Similar restrictions were noted by Dr. Welch in January of 2010. (Tr. 496).

The administrative regulations provide that the opinions of treating sources are generally entitled to greater weight than the opinions of other sources and if well-supported by sufficient medical evidence, entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). When rejecting the opinion of a treating source, the ALJ is required to give good reasons. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ rejected the opinion of Dr. Welch because he believed it was inconsistent with the treatment notes from Pathways and with Miller's reported activities. (Tr. 39). As reported by the ALJ, her claims of weekly group therapy were not supported by the Pathways records. (Tr. 37, 248-261, 278-289, 348-362, 407-428). Dr. Welch's most recent statement of January, 2010 indicated that she only saw her psychiatrist for 15 minutes every two or three months. (Tr. 37, 496). The Pathways records repeatedly indicated her thoughts were coherent, she had no memory problem and was oriented to person, place and time. (Tr. 252-253, 286-287, 355-356, 411-412, 415-416). The current medical record was devoid of emergency room or hospitalization secondary to mental health

complaints. (Tr. 37). The ALJ noted that the plaintiff had difficulty identifying psychological symptoms to Carney and the examiner noted she was focused on physical issues. (Tr. 38, 276). With regard to daily activities, the ALJ observed that the claimant told the Pathways staff that she collected porcelain dolls and figurines. (Tr. 32, 248). She reported being able to clean the house, wash the dishes and watch three hours of television daily on the Function Report. (Tr. 32, 176). She mowed the grass and washed clothes on a weekly basis. (Tr. 32, 178). While disliking large crowds, Miller reported being able to shop at Wal-Mart and occasionally go out to dinner. (Tr. 32, 60-62). Under these circumstances, the ALJ had good reasons to reject Dr. Welch's opinion. Therefore, the court finds no error.

Miller also asserts that the ALJ erred by failing to properly consider the combined effects of her impairments. The plaintiff fails to explain how the ALJ erred on this point. Furthermore, the court has already concluded that the vocational factors considered by the vocational expert fairly depicted the claimant's condition. Thus, the ALJ implicitly considered all relevant factors. Therefore, the court must reject the argument of Miller.

Finally, Miller argues that her medical problems would prevent her from maintaining employment and, so, she could not meet the duration requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999). However, in Gatliff, the record contained considerable evidence that the claimant

would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact. Gatliff, 172 F.3d at 692. In the present action, Miller has not identified similar evidence suggesting that she would not be able to maintain employment. Therefore, the court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 22nd day of December, 2011.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**